Julie R. Ulmet (JRU 1969)
Julie Polakoski-Rennie (JP 4284)
National Labor Relations Board, Region 2
26 Federal Plaza, Room 3614
New York, New York 10278
(212) 264-3853

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X
**KAREN P. FERNBACH, Regional Director,**
**Region 2, National Labor Relations Board,**
**For and on Behalf of the NATIONAL**
**LABOR RELATIONS BOARD,**

        **Petitioner,**

  **-against-**         **14 Civ. _____ (___)**
                 **ECF Case**

**SPRAIN BROOK MANOR REHAB, LLC;**
**PINNACLE DIETARY, INC.; BUDGET**
**SERVICES, INC.; AND LOCAL 713,**
**INTERNATIONAL BROTHERHOOD OF**
**TRADE UNIONS (IBOTU),**

        **Respondents.**
-------------------------------------------------------X

**PETITION FOR TEMPORARY INJUNCTION UNDER**
**SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT**

Comes now Karen P. Fernbach, Regional Director for Region 2 of the National Labor

Relations Board (the "Board"), and petitions this Court for and on behalf of the Board, pursuant

to Section 10(j) of the National Labor Relations Act, as amended, ("the Act"), (61 Stat. 149; 29

U.S.C. § 160(j)), for appropriate injunctive relief pending the final disposition of the matters

involved herein pending before the Board on the Consolidated Complaint and Notice of Hearing

of the General Counsel of the Board in Case No. 02-CA-089480 et al., alleging that Sprain

Brook Manor Rehab, LLC ("Respondent Sprain Brook"), Pinnacle Dietary, Inc. ("Respondent Pinnacle"), Budget Services, Inc. ("Respondent Budget"), and Local 713, International Brotherhood of Trade Unions ("Respondent Local 713") have engaged in and are engaging in unfair labor practices in violation of Sections 8(a)(1), (2), (3), (5), and 8(b)(1)(A) of the Act.

An administrative hearing commenced in the above-mentioned matter on October 6, 2014, and proceeded on the record in the subsequent days that followed until October 10, 2014. The administrative hearing is scheduled to resume on December 15, 2014, and additional dates thereafter.  Petitioner has filed evidence in support of this Petition, contained within an Appendix of Exhibits, which includes the Administrative Hearing Transcripts, exhibits thereto, official Board documents, and other evidence submitted in support of this Petition.[1]  Further, in support of her Petition, Petitioner respectfully shows as follows:

1.      Petitioner is the Regional Director of Region 2 of the Board, an agency of the United States Government, and files this petition for and on behalf of the Board.

2.      Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act.

---

[1] References to the Appendix of Exhibits will be designated as "Ex. __," followed, by an indication of the item contained at that exhibit number.  References to the transcripts in the administrative proceedings, which are attached as Exhibits A through E, are followed by a parenthetical indication of the page and line number(s) of the transcript indicated as ("Tr., page:line").  References to the evidence entered into the record in the administrative hearing, are designated as "GC __" for General Counsel exhibits, "CP __" for Charging Party 1199 SEIU exhibits, "P__" for Respondent Pinnacle exhibits, and "SB__" for Respondent Sprain Brook exhibits.  Evidence entered into the administrative record by the General Counsel is attached to the Petition as Exhibits 1 through Exhibits 56 to the Petition; evidence entered by 1199 SEIU is attached as Exhibit 57; evidence entered by Respondent Pinnacle is attached as Exhibits 58 through 61; and evidence entered by Respondent Sprain Brook is attached as Exhibit 62. Please note the Pinnacle's Exhibit 1 was rejected by the Administrative Law Judge and is not included in the Appendix.  Finally, Exhibits F through V to the Petition consist of evidence that is not part of the administrative record at this time.

## BACKGROUND

### The Charges

3.     (a)     On November 27, 2012, the Charging Party, 1199 SEIU United Healthcare Workers East ("1199 SEIU"), filed a first amended[2] charge with the Board in Case No. 02-CA-089480, alleging, inter alia, that that Respondents Sprain Brook, Pinnacle, and Budget have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a)(1), (2), (3), (4), and (5) of the Act. (Copies of the first amended charge and affidavits of service are attached hereto as Ex. 1x and 1y (GC 1x and 1y)).

(b)     On July 15, 2013, 1199 SEIU filed a second amended charge with the Board in Case No. 02-CA-089480, adding allegations that Respondents Sprain Brook, Pinnacle, and Budget have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a)(1), (2), (3), (4), and (5) of the Act. (Copies of the second amended charge and affidavit of service are attached hereto as Ex.1q and 1r (GC1q and 1r).

(c)     On December 28, 2012, 1199 SEIU filed a charge with the Board, in Case 02-CB-095670, alleging, inter alia, that Respondent Local 713 has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(1)(A) of the Act. (Copies of the charge and affidavit of service are attached hereto as Ex. 1y and 1w (GC 1v and 1w)).

(d)     On January 30, 2013, 1199 SEIU filed a first amended charge in Case 02-CB-095670 adding allegations that that Respondent Local 713 has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(1)(A) and (2) of the Act. (Copies of the first amended charge and affidavits of service are attached hereto as Ex. 1t and 1u (GC 1t and 1u)).

---

[2] The original charge in this case named as a charged party only Sprain Brook Nursing Home, LLC, the alleged predecessor to Respondent Sprain Brook.

(e)     On July 22, 2013, 1199 SEIU filed a second amended charge in Case 02-CB-095670, adding allegations that Respondent Local 713 has engaged in, and is engaging in, unfair labor practices with the meaning of Sections 8(b)(1)(A) and (2) of the Act. (Copies of the second amended charge and affidavits of service are attached hereto as Ex. 1p and 1q (GC 1p and 1q)).

(f)     On July 22, 2013, 1199 SEIU filed a third amended charge in Case No. 02-CA-089480, adding allegations that Respondents Sprain Brook, Pinnacle, and Budget have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a)(1), (2), (3), (4), and (5) of the Act. (Copies of the third amended charge and affidavit of service are attached hereto as Ex. 1n and 1o (GC 1n and o)).

**The Administrative Proceeding**

4.     (a)     The aforesaid charges described above in paragraph 3 were referred to the Regional Director of Region 2 of the Board.

(b)     Following an investigation of the allegations in which Respondents Sprain Brook, Local 713, Pinnacle, and Budget were given the opportunity to present evidence and legal argument, the Regional Director, on behalf of the General Counsel of the Board, pursuant to Section 10(b) of the Act (29 U.S.C. § 160(b)), issued a Consolidated Complaint and Notice of Hearing (the "Complaint"), on July 31, 2014, alleging that Respondents Sprain Brook, Pinnacle, and Budget engaged in, and are engaging in, unfair labor practices as charged within the meaning of Section 8(a)(1), (2), (3), and (5), and alleging that Respondent Local 713 engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section 8(b)(1)(A) of the Act.  (Copies of the Complaint and affidavit of service thereof are attached hereto as Exs. 1l and 1m (GC 1l and 1m)).

(c)    (1)    Respondent Sprain Brook, by its Counsel, filed an Answer to the Complaint on August 28, 2014.  (Copy of that Answer is attached hereto as Ex. 1d (GC 1d)).

(2)    Respondent Pinnacle, by its Counsel, filed an Answer to the Complaint on August 14, 2014. (Copy attached hereto as Ex. 1g (GC 1g)).

(3)    Respondent Local 713, by its Counsel, filed an Answer to the Complaint on August 26, 2014. (Copy attached hereto as Ex. 1d (GC 1d)).

(d)    On October 6, 2014, on the first day of the administrative hearing, the complaint was amended by order of the Administrative Law Judge Kenneth W. Chu ("Judge Chu") (the "First Amended Complaint"). (First Amended Complaint attached hereto as Ex. 2 (GC2); Judge Chu's order on the record is attached as Ex A (Tr., 10:2-4)).

(e)    (1)    Respondent Sprain Brook, by its Counsel, filed an Answer to the First Amended Complaint on October 8, 2014.  (Copy attached hereto as Ex. 2a (GC 2a)).

(2)    Respondent Pinnacle, by its Counsel, filed an Answer to the First Amended Complaint on October 7, 2014. (Copy attached hereto as Ex. 2b (GC 2b)).

(3)    Respondent Local 713, by its Counsel, stated on the record its denial of all allegations in the First Amended Complaint insofar as they relate to Local 713. (Ex. C (Tr., 227:12-14)).

(f)    (1)    A second amended complaint issued on November 17, 2014 (the "Second Amended Complaint") by order of Judge Chu granting General Counsel's Motion to Amend (the "November 17 Order"). (Copy of the November 17 Order is attached hereto as Ex. F; Copy of December 5, 2014 Order attaching Second Amended Complaint is attached hereto as Ex. G).[3]

---

[3] The Second Amended Complaint amended the First Amended Complaint only insofar as Respondent Budget was added as a Respondent, and certain allegations pertaining to Budget were added.

(2)     In the November 17 Order, Judge Chu ordered that Budget answer the consolidated complaint within 14 days of the November 17 Order, consistent with the Board's Rules, Section 102.20 and 102.21. (See Ex. F). To date, Petitioner has not received a copy of any answer submitted by Budget.

(g)     (1)     Pursuant to the Complaint, a hearing commenced on October 6, 2014, and proceeded on the record in the subsequent days that followed until October 10, 2014, at which time the hearing recessed.

(2)     The hearing was scheduled to resume on November 3 and 4, 2014, November 19 through 21, 2014 and December 5 through 6, 2014.  For various reasons, each of these scheduled dates were cancelled by order of Judge Chu.

(3)     The hearing is scheduled to resume on December 15 and 16, 2014, and January 20, 21, 26, 27, and 28, 2015, and additional dates thereafter as yet unscheduled.

## REASONABLE CAUSE TO BELIEVE RESPONDENTS VIOLATED THE ACT

5.     Based upon the evidence adduced during the investigation of the unfair labor practice charges described above in paragraph 3 and evidence admitted into the administrative record in the hearing described above in sub-paragraph (4)(g), Petitioner has reasonable cause to believe that the allegations contained in the Complaint are true, and that Respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a)(1), (2), (3), and (5) and 8(b)(1)(A) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, for which a remedy will be ordered by the Board. However, Petitioner also has reasonable cause to believe that the Board's order for such remedy will be frustrated without the injunctive relief sought herein. Petitioner asserts that there is substantial likelihood of success in prevailing in the underlying administrative proceedings in Case Nos. 02-CA-089480

and 02-CB-095670, and establishing that Respondents Sprain Brook,  Pinnacle, Budget, and Local 713, have engaged in, and are engaging in, unfair labor practices in violation of Section 8(a)(1), (2), (3), and (5) and 8(b)(1)(A) and (2) of the Act.  In support thereof, and of the request for temporary injunctive relief, Petitioner, upon information and belief, shows as follows:

**Employer Status**

(a)    (1)    Respondent Sprain Brook admits that, at all material times, it has been a domestic limited liability corporation with an office and place of business located in Scarsdale, New York (the "Facility") and has been engaged in the business of operating and maintaining a nursing home.  (*Compare* Ex. G, ¶ 2(a)(i) *with* Ex. 2(a), ¶2 (GC 2(a), ¶2)).

(2)    On or about June 15, 2012, Respondent Sprain Brook completed the purchase of the business of Sprain Brook Manor Nursing Home LLC ("SB Nursing Home"), and since at least that time, has continued to operate the business of SB Nursing Home in basically unchanged form, and has employed as a majority of its employees individuals who were previously employees of SB Nursing Home.  (Ex. G, ¶ 2(a)(ii)).

(3)    Based on its operations described in paragraph 5.(a)(1), Respondent Sprain Brook has continued the employing entity and is a successor to SB Nursing Home.  (Ex. G, ¶ 2(a)(iii)).

(b)    (1)    Respondent Pinnacle admits that, at all material times, it has been a domestic corporation with an office and place of business in Newburgh, New York, and has been engaged in providing food services. (Compare Ex. G, ¶ 2(b)(i) *with* Ex. 2(b), ¶5 (GC 2(b), ¶5)).

(2)    Respondent Pinnacle admits that, at all material times since in or around August 2012, Respondents Sprain Brook and Pinnacle have been parties to a contract

pursuant to which Respondent Pinnacle performs certain functions with respect to the food services operations at the Facility. (Compare Ex. G, ¶ 2(b)(ii) *with* Ex. 2(b), ¶6 (GC 2(b), ¶6)).

(3)    At all material times, Respondent Sprain Brook has possessed control over the labor relations policy of Respondent Pinnacle. (Ex. G, ¶ 2(b)(iii)).

(4)    At all material times, Respondents Sprain Brook and Pinnacle have been joint employers of the food services employees in the Facility, as described below in sub-paragraph 5.(i)(3). (Ex. G, ¶ 2(b)(iv)).

(c)    (1)    At all material times, Respondent Budget has been a domestic corporation with an office and place of business in Brooklyn, New York, and has been engaged in providing staffing services.(Ex. G, ¶ 2(e)(i)).

(2)    At all material times since in or around September 2012, Respondents Sprain Brook and Budget have been parties to a contract pursuant to which Respondent Budget performs certain functions with respect to the nursing operations at the Facility. (Ex. G, ¶ 2(e)(ii)).

(3)    At all material times, Respondent Sprain Brook has possessed control over the labor relations policy of Respondent Budget. (Ex. G, ¶ 2(e)(iii)).

(4)    At all material times, Respondents Sprain Brook and Budget have been joint employers of the nursing employees in the Facility, as described below in sub-paragraph 5(i)(4). (Ex. G, ¶2(e)(iv)).

(d)    (1)    At all material times since in or around September 2012, Respondents Pinnacle and Budget have been parties to an agreement pursuant to which Respondent Budget performs certain functions with respect to the dietary operations at the Facility. (Ex. G, ¶2(f)(i)).

(2)     At all material times, Respondent Pinnacle has possessed control over the labor relations policy of Respondent Budget. (Ex. G, ¶2(f)(ii)).

(3)     At all material times, Respondents Pinnacle and Budget have been joint employers of the dietary employees in the Facility, as described below in sub-paragraph 5.(i)(3). (Ex. G, ¶2(f)(iii)).

**Jurisdiction**

(e)     (1)     Annually, Respondent Sprain Brook derives gross revenues in excess of $100,000 and purchases and receives goods and services valued in excess of $5,000 directly from suppliers located outside the State of New York.  (Ex. G, ¶3(a)(i)).

(2)     Respondent Pinnacle admits that, annually, it provides services valued in excess of $50,000 for enterprises directly engaged in interstate commerce, including Respondent Sprain Brook, which is directly engaged in interstate commerce, as set forth in sub-paragraph 5(e)(1). (Compare Ex. G, ¶3(a)(ii) *with* Ex. 2(b), ¶18 (GC 2(b), ¶18).

(3)     Annually, Respondent Budget provides services valued in excess of $50,000 for enterprises directly engaged in interstate commerce, including Respondent Sprain Brook, which is directly engaged in interstate commerce, as set forth in sub-paragraph 5(e)(1). (Ex. G, ¶3(a)(v)).

(f)     (1)     At all material times, Respondent Sprain Brook has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.   (Ex. G, ¶3(b)(i)).

(2)      Respondent Pinnacle admits that, at all material times, it has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. (Compare Ex. G, ¶3(b)(ii) *with* Ex. 2(b), ¶21 (GC 2(b), ¶21)).

(3)     At all material times, Respondent Budget has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. (Ex. G, ¶3(b)(v)).

**Labor Organization Status**

(g)     (1)     At all material times, 1199 SEIU has been a labor organization within the meaning of Section 2(5) of the Act. (Ex. G, ¶4(a)).

(2)     Respondent Local 713 admits that, at all material times, it has been a labor organization within the meaning of Section 2(5) of the Act. (Compare Ex. G, ¶4(b) with Ex. 1(d), ¶4 (GC 1(d), ¶4).

**Supervisory and Agency Status**

(h)     At all material times, the following individuals held the positions set forth opposite their names and have been supervisors of the named Respondent within the meaning of Section 2(11) of the Act and/or agents of the named Respondent within the meaning of Section 2(13) of the Act, as set forth next to their names[4]:

---

[4] At the time the Complaint issued, Petitioner did not have knowledge of the last names of the individuals listed at sub-paragraphs (1), (3), and (4).

| | Individual | Title | 2(11) Supervisor of Respondent(s): | 2(13) Agent of Respondent(s): |
|---|---|---|---|---|
| 1. | Andrew Merklinger | Unknown | Pinnacle Sprain Brook | Pinnacle Sprain Brook |
| 2. | Russ Barksdale | Consultant | N/A | Sprain Brook |
| 3. | Crystel Plotschke | Human resources representative | N/A | Sprain Brook |
| 4. | Estafany  Sanchez | Staffing Coordinator | N/A | Sprain Brook |
| 5. | Steven Lopez | Food Service Director | Pinnacle Sprain Brook | Pinnacle Sprain Brook |
| 6. | Amelia Mendizabal | Nursing Director | Sprain Brook | Sprain Brook |
| 7. | Mercedes (LNU) | Supervisor | Sprain Brook | Sprain Brook |
| 8. | Shlomo Mushell | Administrator | Sprain Brook | Sprain Brook |
| 9. | Israel Nachfolger | Chief Financial Officer | Sprain Brook | Sprain Brook |
| 10. | Foruq Rahim | Unknown | N/A | Pinnacle Budget Sprain Brook |
| 11. | Allen "Ari" Stein | Owner | Sprain Brook | Sprain Brook |
| 12. | Lazar Strulowitch | Owner | Sprain Brook | Sprain Brook |
| 13. | Moses Strulovitch | Operator | Sprain Brook | Sprain Brook |
| 14. | Samantha Ward | Food Service Director | Pinnacle Sprain Brook | Pinnacle Sprain Brook |
| 15. | Budget Services, Inc. | N/A | N/A | Sprain Brook |

(Ex. G, ¶5(a)-(o)).

### Section 9(a) Status

(i)      (1)      The following employees (the "Unit") constitute a unit appropriate

for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time and per-diem non-professional employees including licensed practical nurses, certified nurses aides, geriatric techs/activity aides, housekeeping employees, laundry employees/assistants, dietary aides, and cooks employed by the employer at its facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act.

(Ex. G, ¶ 6(a)(i)).

(2)     On or about June 29, 2006, the Board certified the 1199 SEIU as the exclusive collective-bargaining representative of the Unit employed by SB Nursing Home.

(3)     From about June 29, 2006, to about June 15, 2012, based on Section 9(a) of the Act, the 1199 SEIU was the exclusive collective-bargaining representative of the Unit employed by SB Nursing Home.

(j)     (1)     Since at least June 15, 2012, the 1199 SEIU has been the designated exclusive collective-bargaining representative of the Unit employed by Respondent Sprain Brook.

(2)     At all times since at least June 15, 2012, based on Section 9(a) of the Act, the 1199 SEIU has been the exclusive collective-bargaining representative of the Unit employed by Respondent Sprain Brook Rehab.

(k)     (1)     The following employees, jointly employed by Respondent Pinnacle and/or Respondent Sprain Brook and/or Respondent Budget (the "Dietary Unit"), constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time and per-diem dietary aides and cooks employed by the employer at the facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act.

(2)     From at least June 15, 2012, to in or around August 2012, based on Section 9(a) of the Act, the 1199 SEIU had been the exclusive collective-bargaining representative of the Unit, including the Dietary Unit, employed by Respondent Sprain Brook.

(3)     Since in or around August 2012, based on Section 9(a) of the Act, the 1199 SEIU has been the designated exclusive collective-bargaining representative of the

Dietary Unit jointly employed by Respondent Pinnacle and/or Respondent Sprain Brook and/or Respondent Budget.

(l)   (1)   The following employees of Respondent Sprain Brook and/or Respondents Sprain Brook and Budget, as joint employers, (the "Nursing Unit") constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time and per-diem licensed practical nurses, certified nurses aides, and geriatric techs/activity aides, employed by the employer at the facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act.

(2)   Since about June 15, 2012, based on the allegations in sub-paragraph 5(a), based on Section 9(a) of the Act, the 1199 SEIU has been the exclusive collective-bargaining representative of the Unit, including the Nursing Unit, employed by Respondent Sprain Brook and/or Respondents Sprain Brook and Budget, as joint employers.

**Refusals to Recognize and Bargain**

(m)   (1)   On or about the following dates, and via the following means of communication, 1199 SEIU requested that Respondent Sprain Brook recognize it as the exclusive collective-bargaining representative of the Unit and bargain collectively with 1199 SEIU as the exclusive collective-bargaining representative of the Unit:

A.   December 10, 2010, by letter;

B.   September 13, 2012, by letter; and

C.   October 8, 2012, by letter.

(Ex. G, ¶7(a)(i)).

(2)     Since at least June 15, 2012, and continuing thereafter, Respondent Sprain Brook has failed and refused to recognize and bargain collectively with 1199 SEIU as the exclusive collective-bargaining representative of the Unit.  (Ex. G, ¶7(a)(ii)).

(n)     (1)     On or about October 8, 2012, by letter, 1199 SEIU requested that Respondent Pinnacle recognize it as the exclusive collective-bargaining representative of the Dietary Unit and bargain collectively with 1199 SEIU as the exclusive collective-bargaining representative of the Dietary Unit.  (Ex. G, ¶7(b)(i)).

(2)     Since on or about October 8, 2012, Respondent Pinnacle has failed and refused to recognize and bargain collectively with 1199 SEIU as the exclusive collective-bargaining representative of the Dietary Unit, based on the allegations set forth in sub-paragraph 5(b). (Ex. G, ¶7(b)(ii)).

**Unilateral Changes and Discriminatory Conduct Regarding Contracting of Unit Work**

(o)     (1)     In or around August 2012, Respondent Sprain Brook entered into a contract with Respondent Pinnacle, pursuant to which Pinnacle performs certain functions with respect to the food services at the Facility. (Ex. G, ¶8(a)(i)).

(2)     In or around September 2012, Respondent Sprain Brook entered into a contract with Respondent Budget, pursuant to which Budget performs certain functions with respect to the nursing services at the Facility. (Ex. G, ¶8(a)(ii)).

(3)     In or around September 2012, Respondent Sprain Brook entered into a contract with Confidence Management Systems, Inc. ("Confidence"), pursuant to which Confidence performed certain functions with respect to the housekeeping and cleaning services at the Facility. (Ex. G, ¶8(a)(iii)).

(4)     On or about July 1, 2013, Respondent Sprain Brook entered into a contract with Commercial Building Maintenance Corp. ("CBM"), pursuant to which CBM performs certain functions with respect to the housekeeping and cleaning services at the Facility. (Ex. G, ¶ 8(a)(iv)).

(p)     The subjects set forth above in paragraph 5(o) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining. (Ex. G, ¶ 8(b).

(q)     Respondent Sprain Brook engaged in the conduct described above in paragraph 5(o) without prior notice to 1199 SEIU and without affording 1199 SEIU an opportunity to bargain with Respondent Sprain Brook with respect to this conduct or the effects of this conduct. (Ex. G, ¶ 8(c)).

(r)     As a result of Respondent Sprain Brook's conduct described in sub-paragraph 5(o), in or around August and September 2012, Sprain Brook discharged all nursing, housekeeping, cleaning, and dietary employees and/or required all nursing, housekeeping, cleaning, and dietary employees to reapply for their jobs.  (Ex. G, ¶ 8(d)(i)-(iii)).

(s)     Respondent Sprain Brook engaged in the conduct described above in sub-paragraph 5(r) because the named categories of employees assisted 1199 SEIU and to discourage employees from engaging in those activities. (Ex. G, ¶8(e).

**Unilateral Changes to Additional Terms and Conditions of Employment**

(t)     (1)     In or around June 2012, and continuing thereafter, Respondent Sprain Brook denied representatives of 1199 SEIU access to its Facility, which 1199 SEIU had previously enjoyed, for purposes of meeting with Respondent Sprain Brook's management and/or employees.  (Ex. G, ¶ 9(a)(i)).

(2)     The subjects set forth in sub-paragraph 5(o) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.  (Ex. G, ¶ 9(a)(ii))

(3)     Respondent Sprain Brook engaged in the conduct described above in sub-paragraph 5(t) without prior notice to 1199 SEIU and without affording 1199 SEIU an opportunity to bargain with Respondent Sprain Brook with respect to this conduct and the effects of this conduct.  (Ex. G, ¶9(a)(iii)).

(u)     (1)     On or about September 12, 2012, Respondents Sprain Brook and/or Pinnacle, as joint employers, made changes to the terms and conditions of employment of employees in the Dietary Unit, including: (1) decreased employees' wages; (2) decreased employees' hours; (3) eliminated health insurance benefits; and (4) eliminated paid holidays. (Ex. G, ¶9(b)(i)).

(2)     The subjects set forth above in sub-paragraph 5(w) relate to wages, hours, and other terms and conditions of employment of the Dietary Unit and are mandatory subjects for the purposes of collective bargaining. (Ex. G, ¶9(b)(ii)).

(3)     Respondents Sprain Brook and/or Pinnacle, as joint employers, engaged in the conduct described above in sub-paragraph 5(u) without prior notice to 1199 SEIU and without affording 1199 SEIU an opportunity to bargain with Respondents Sprain Brook and/or Pinnacle with respect to this conduct and the effects of this conduct. (Ex. G, ¶9(b)(iii)).

**Unlawful Assistance**

(v)     (1)     On or about September 14, 2012, Respondent Sprain Brook gave assistance and support to Respondent Local 713:  (i) by facility-wide intercom announcement, by directing employees to attend a meeting in the recreation room at the Facility in order to meet

16

with Local 713 representatives and/or sign authorization cards and/or dues check-off authorizations for Local 713, and (ii) by an agent of Sprain Brook Rehab whose identity is presently unknown to the General Counsel but known to Sprain Brook, by permitting Respondent Local 713 to utilize the Facility for the purpose of this meeting.  (Ex. G, ¶10(a)).

(2)     On or about September 14, 2012, Respondent Sprain Brook, by an agent of Respondent Sprain Brook whose identity is presently unknown to the General Counsel but known to Respondent Sprain Brook, in the meeting described in sub-paragraph 5(v)(1), gave assistance and support to Respondent Local 713 by threatening employees with discharge if they did not sign check-off authorizations for Respondent Local 713. (Ex. G, ¶10(b)).

(3)     On or about October 15, 2012, Respondents Sprain Brook and/or Pinnacle, as joint employers, through their agent Andrew (LNU), in the kitchen, gave assistance and support to Respondent Local 713 by urging employees to sign check-off authorizations for Respondent Local 713. (Ex. G, ¶10(c)).

(4)     On or about October 15, 2012, Respondents Sprain Brook and/or Pinnacle, as joint employers, through their agent Andrew (LNU), in the kitchen, gave assistance and support to Respondent Local 713 by threatening employees with discharge if they did not sign check-off authorizations for Respondent Local 713. (Ex. G, ¶10(d)).

(5)     On or about October 18, 2012, Respondent Sprain Brook, through its agent Estefany (LNU), gave assistance and support to Respondent Local 713 by urging employees to sign check-off authorizations for Respondent Local 713. (Ex. G, ¶10(e)).

(6)     On or about October 23, 2012, Respondent Sprain Brook, and/or Respondent Budget, by their agent Foruq Rahim, in the dining room and/or recreation room, gave assistance and support to Respondent Local 713 by permitting Respondent Local 713 to

utilize the Facility for the purpose of soliciting employees' signatures on union authorization cards for Respondent Local 713. (Ex. G, ¶10(f)).

(7)     On or about October 24, 2012, Respondent Pinnacle and/or Respondents Sprain Brook and Pinnacle, as joint employers, by their agent Samantha Ward, in the kitchen, gave assistance and support to Respondent Local 713 by threatening employees with discharge if they did not sign check-off authorizations for Respondent Local 713. (Ex. G, ¶10(g)).

(8)     In or about December 2012, Respondent Sprain Brook, by Nursing Supervisor Mercedes (LNU), at the nursing work station, required an employee to sign an authorization card for Respondent Local 713 as a condition of employment. (Ex. G, ¶10(h)).

(9)     At various times in or around early 2013, Respondent Sprain Brook, by an agent of Respondent Sprain Brook whose identity is unknown to the General Counsel but known to Respondent Sprain Brook, gave assistance and support to Respondent Local 713 by permitting Respondent Local 713 to utilize the Facility and equipment for the purposes of organizing employees and soliciting union authorization cards, by (1) permitting Respondent Local 713 to post a notice to employees above the time-clock for this purpose; and (2) permitting Respondent Local 713 to utilize its conference room every first and third Monday of each month thereafter, from 2:00 p.m. to 4:00 p.m., for this purpose. (Ex. G, ¶10(i)).

(10)     In or around December 2013, Respondent Pinnacle and/or Respondents Sprain Brook and Pinnacle, as joint employers, gave assistance and support to Respondent Local 713 by threatening employees with loss of benefits if they did not sign check-off authorization cards for Respondent Local 713 (i) through their agent Steven Lopez, in a

18

location presently unknown to General Counsel, and (ii) through their agent Crystel (LNU), by telephone. (Ex. G, ¶10(j)).

(11)    The named Respondents engaged in the conduct described above in sub-paragraph 5(v)(1)-(10) while at the same time excluding and denying access to 1199 SEIU. (Ex. G, ¶10(k)).

**<u>Unlawful Recognition and Forming of Collective-Bargaining Agreements</u>**

(w)    (1)    In or around December 2012, Respondent Sprain Brook and/or Respondent Budget recognized and entered into a collective-bargaining agreement with Respondent Local 713 covering the nursing Unit described above in sub-paragraph 5(i), and has since that time maintained such collective-bargaining agreement. (Ex. G, ¶11(a)).

(2)    On or about November 1, 2012, Respondent Budget, and/or Respondents Budget, Pinnacle and Sprain Brook, as joint employers, recognized and entered into a collective-bargaining agreement with Respondent Local 713 covering the Dietary Unit and has since that time maintained such collective-bargaining agreement. (Ex. G, ¶(d)).

(3)    Respondent Budget, and/or Respondents Budget, Pinnacle and/or Sprain Brook, as joint employers, as joint employers, engaged in the conduct alleged in sub-paragraph 5(w)(1)-(2) even though Respondent Local 713 did not represent an uncoerced majority of employees. (Ex. G, ¶11(b) and 11(e)).

(4)    Respondent Budget, and/or Respondents Budget, Pinnacle, and/or Respondent Sprain Brook, as joint employers, engaged in the conduct alleged in sub-paragraph 5(w)(1)-(2) even though the named Respondents had a bargaining obligation to 1199 SEIU at that time, as described above in sub-paragraphs 5(j), (k), and (l). (Ex. G, ¶11(c) and 11(f)).

**Unlawful Dues Deduction and Remittance**

(x)     (1)     In or around January 2013, and continuously thereafter, Respondent Sprain Brook, and/or Respondent Budget Services, Inc., gave assistance and support to Respondent Local 713 by deducting money from Nursing Unit employees' wages and remitting it to Respondent Local 713 notwithstanding the absence of employee authorizations for the deductions and remittance, and/or notwithstanding the absence of uncoerced employee authorizations for the deductions and remittance.  (Ex. G, ¶12(a)).

(2)     In or around March 2013, and continuously thereafter, Respondent Budget, and/or Respondent Pinnacle, and/or Respondents Budget, Pinnacle and/or Sprain Brook, as joint employers, gave assistance and support to Respondent Local 713 by deducting money from Dietary Unit employees' wages and remitting it to the Respondent Local 713 notwithstanding the absence of employee authorizations for the deductions and remittance, and/or notwithstanding the absence of uncoerced employee authorizations for the deductions and remittance.  (Ex. G, ¶12(b)).

**Unlawful Conduct by Respondent Local 713**

(y)     (1)     On various dates between September 14, 2012, and January 2013, and continuously thereafter, Respondent Local 713 received assistance and support from the named Respondents by the conduct set forth in sub-paragraph 5(v). (Ex. G, ¶13(a)).

(2)     In or around December 2012, Respondent Local 713 accepted recognition from the named Respondents, and/or entered into collective-bargaining agreements with the named Respondents, as set forth in sub-paragraphs 5(w). (Ex. G, ¶13(b)).

(3)     In or around January 2013, and continuously thereafter, Respondent Local 713 accepted unlawful dues remittances from the named Respondents, as described in sub-paragraphs (x). (Ex. G, ¶13(c)).

### Discriminatory Individual Discharges

(z)     (1)     On or about September 22, 2012, Respondent Budget, and/or Respondent Pinnacle, and/or Respondents Budget, Pinnacle and/or Sprain Brook, as joint employers, discharged employee Alvin Nicholson.  (Ex. G, ¶14(a)(i)).

(2)     At all times since September 22, 2012, Respondent Budget, and/or Respondent Pinnacle, and/or Respondents Budget, Pinnacle and/or Sprain Brook, as joint employers, have failed and refused to reinstate Alvin Nicholson to his former position of employment. (Ex. G, ¶14(a)(ii)).

(3)     Respondent Budget, and/or Respondent Pinnacle, and/or Respondents Budget, Pinnacle and/or Sprain Brook Rehab, as joint employers, engaged in the conduct described above in sub-paragraphs 5(z)(1) and (2) because the named employee assisted 1199 SEIU and/or refused to assist Respondent Local 713, and to discourage employees from engaging in these activities. (Ex. G, ¶14(a)(iii)).

(aa)     (1)     On or about October 24, 2012: Respondent Sprain Brook caused Confidence to discharge employee Clarisse Nogueira. (Ex. G, ¶14(b)(i)).

(2)     At all times since October 24, 2012, Respondent Sprain Brook has failed and refused to reinstate Clarisse Nogueira to her former position of employment or to a substantially equivalent position of employment. (Ex. G, ¶14(b)(iii)).

(3)     Respondents Sprain Brook engaged in the conduct described above in sub-paragraphs 5(aa)(1) through (3) because the named employee assisted 1199 SEIU and/or

refused to assist Respondent Local 713, and to discourage employees from engaging in these activities. (Ex. G, ¶14(b)(iv)).

**<u>Conclusions</u>**

(bb)   By the conduct described above in sub-paragraphs 5(v), (w), (x), the named Respondents have been rendering unlawful assistance and support to a labor organization in violation of Section 8(a)(1) and (2) of the Act. (Ex. G, ¶16).

(cc)   By the conduct described above in sub-paragraphs 5(s), (t) and (u), the named Respondents have been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act. (Ex. G, ¶17).

(dd)   By the conduct described above in sub-paragraphs 5(m), (n), (o), (t), and (u)  the named Respondents have been failing and refusing to bargain collectively in good faith with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act. (Ex. G, ¶18).

(ee)   By the conduct described above in sub-paragraph 5(y), Respondent Local 713 has been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(b)(1)(A) of the Act. (Ex. G, ¶19).

(ff)   The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act. (Ex. G, ¶20).

(gg)   Certain of the unfair labor practices of Respondent described above have taken place within this judicial district.

## IRREPARABLE HARM CAUSED BY RESPONDENTS' VIOLATIONS OF THE ACT

6.       Respondent's unfair labor practices, described above in paragraph 5, have irreparably harmed, and are continuing to harm, employees of Respondents Sprain Brook, Pinnacle, and Budget in the exercise of rights guaranteed them by Section 7 of the Act (29 U.S.C. § 157).  More specifically, Respondents' unfair labor practices have caused the following harm:

(a)       Respondents' employees have suffered significant economic harm through the loss of work hours, their reduction of pay, loss of benefits, loss of pay, and loss of livelihood, as a result of the unlawful subcontracting and other unilateral changes to the terms and conditions of their employment due to their concerted and Union activities;

(b)       Respondents' employees have suffered significant economic harm through loss of work hours, benefits, loss of pay, and livelihood, as a result of their unlawful layoff and discharge due to their concerted and Union activities;

(c)       Respondents' unfair labor practices have created an atmosphere in which employees fear retaliation and discharge if they engage in concerted and Union activities;

(d)       Respondents' employees have been deprived of and are without the benefits of representation by 1199 SEIU, the employees' freely-chosen exclusive collective-bargaining representative as demonstrated through Board certification of an election, including the benefits that could be derived from collective-bargaining; and

(e)       Unit employees have suffered the loss of 1199 SEIU's ability to bargain effectively on their behalf, including over the terms of an initial collective-bargaining agreement.

7.       Upon information and belief, unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the

Board's processes and the exercise of statutory rights, a harm which cannot be remedied in due course by the Board.

8.      There is no adequate remedy at law for the irreparable harm caused by Respondent's unfair labor practices, described above in paragraph 5.

9.      Granting the temporary injunctive relief is just and proper to prevent irreparable harm and/or to preserve the status quo.

10.     Upon information and belief, it may fairly be anticipated that unless Respondents' conduct of the unfair labor practices described in paragraph 5 above is immediately enjoined and restrained, Respondents will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices during the proceedings before the Board and during any subsequent proceedings before a United States Court of Appeals, with the predictable result of continued interference with the rights of employees to engage in activities protected by Section 7 of the Act, with the result that employees will be deprived of their Section 7 rights under the Act, inter alia, to form, join, or assist a labor organization or to refrain from any and all such activities and to engage in concerted activities, and will be denied their statutory right to freely express their choice as to representation or to be represented for collective-bargaining purposes by 1199 SEIU, and that 1199 SEIU will be unable to ever successfully function as an effective collective-bargaining representative of the Unit employees, all to the detriment of the policies of the Act, the public interest, the interest of the employees involved, and the interest of 1199 SEIU.

## PRAYER FOR RELIEF

11.     Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act

and the public interest, and avoiding substantial, irreparable, and immediate injury to such policies and interest, and in accordance with the purposes of Section 10(j) of the Act that, pending final disposition of the matters involved pending before the Board, Respondents be enjoined and restrained from the commission of the acts and conduct alleged above, similar acts and conduct or repetitions thereof, and be ordered to take the affirmative action set forth below:

WHEREFORE, Petitioner prays for an Order providing relief as follows:

## 1. **RESPONDENT SPRAIN BROOK**

**IT IS HEREBY ORDERED** that, pending the final disposition of the matters here involved pending before the Board, Respondent Sprain Brook its officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with it or them, are enjoined and restrained from:

(a) Failing and refusing to recognize and bargain in good faith with 1199 SEIU United Healthcare Workers East ("1199 SEIU") as the exclusive collective-bargaining representative of employees in the following bargaining unit (the "Sprain Brook Unit"):
> All full-time and regular part-time and per-diem non-professional employees including licensed practical nurses, certified nurses aides, geriatric techs/activity aides, housekeeping employees, laundry employees/assistants, dietary aides, and cooks employed by the employer at its facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act;

(b) Subcontracting or otherwise performing Sprain Brook Unit work with non-Sprain Brook Unit employees in retaliation for its employees assisting 1199 SEIU and/or to discourage employees from engaging in those activities and/or without first providing 1199 SEIU with notice and the opportunity to bargain either to an agreement concerning the decision to subcontract or overall impasse on a collective bargaining agreement;

(c) Denying representatives of 1199 SEIU access to its facility located at 77 Jackson Avenue, Scarsdale, New York for purposes of meeting with Sprain Brook's management and/or Sprain Brook Unit employees without first providing 1199 SEIU with notice and the opportunity to bargain either to an agreement concerning that decision or overall impasse on a collective bargaining agreement;

(d) Implementing changes to the terms and conditions of employment of employees in the Sprain Brook Unit that are mandatory subjects for the purposes of collective bargaining without first providing 1199 SEIU with notice and the opportunity to bargain either to an agreement concerning the change or overall impasse on a collective bargaining agreement;

(e) Terminating, or causing the termination of, employees because of their support for and activities on behalf of 1199 SEIU and/or to discourage employees from engaging in these activities;

(f) Unlawfully assisting Local 713 by ordering Sprain Brook Unit employees to sign authorization cards for Local 713 and threatening employees with discharge, a loss of benefits, and other reprisals for refusing to sign authorization cards for Local 713;

(g) Unlawfully assisting Local 713 by deducting dues from Sprain Brook Unit employees' pay and remitting those dues to Local 713;

(h) Unlawfully assisting Local 713 by entering into and/or maintaining a collective bargaining agreement with Local 713 covering Sprain Brook Unit employees; and

(i) In any other manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act.

**IT IS FURTHER ORDERED** that Respondent Sprain Brook take the following

affirmative actions:

(a) Within FOURTEEN (14) days of the issuance of this Order, rescind the current subcontracts for the performance of Sprain Brook Unit dietary, nursing, housekeeping and laundry work, restore such work to the bargaining Sprain Brook Unit; and offer immediate interim reinstatement to all employees currently performing Sprain Brook Unit work, with the terms and conditions of employment that existed for those positions on September 12, 2012;

(b) Within FOURTEEN (14) days of this Order, offer immediate reinstatement to Sprain Brook Unit employees Clarisse Nogueira and Alvin Nicholson to their former job positions and working conditions, as they existed on or about September 12, 2012, with the terms and conditions of employment that existed on September 12, 2012, or if those job positions no longer exists, to substantially equivalent positions, displacing, if necessary, any workers contracted for, hired, or reassigned to replace them, without prejudice to their seniority or any other rights or privileges previously enjoyed;

(c) Withdraw recognition from Local 713 as the purported collective-bargaining representative of any Sprain Brook Unit employees;

(d) Rescind any and all collective-bargaining agreements with Local 713 covering Sprain Brook Unit employees;

(e)  Cease deducting Sprain Brook Unit employee dues for, and remitting dues to, Local 713;

(f)  Recognize and bargain collectively and in good faith with 1199 SEIU as the exclusive collective-bargaining representative of the Sprain Brook Unit employees concerning their wages, hours, and other terms or conditions of employment and, if agreement is reached, embody such agreement in a signed document;

(g)  Provide 1199 SEIU with advanced notice of any change(s) to the wages, hours, and other terms or conditions of employment of Sprain Brook Unit employees and, upon request, bargain either to an agreement over the intended changes or overall impasse on a collective bargaining agreement prior to implementing the change(s);

(h)  Upon request of 1199 SEIU, restore any and all of the Sprain Brook Unit employees' terms and conditions of employment as they existed for those positions on September 12, 2012 or prior to the date Respondent Sprain Brook first subcontracted Sprain Brook Unit work;

(i)  Within FIVE (5) days of issuance of this Order, post copies of this Order at Respondent's facility at 77 Jackson Avenue, Scarsdale, New York, at all locations where notices to its employees are customarily posted; maintain said postings during the term of this Order, with all employees to have free and unrestricted access to said postings; and grant agents of the Board reasonable access to said facility to monitor compliance with this posting requirement;

(j)  Within TEN (10) days of issuance of the Court's Order, hold a mandatory meeting or meetings at Respondent Sprain Brook's facility on working time, scheduled to ensure the widest possible audience of employees, at which a responsible management official, in the presence of a Board agent (or, at Respondent's option, a Board agent, in the presence of a responsible management official), shall read the Court's Order; and

(k)  Within FOURTEEN (14) days of the issuance of the Court's order, file with the Court, with a copy submitted to the Regional Director of the Board for Region 2, a sworn affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent Sprain Brook complied and will continue to comply with the terms of the decree, including the location of the documents to be posted under the terms of this decree.

## 2. **RESPONDENT PINNACLE**

**IT IS HEREBY ORDERED** that, pending the final disposition of the matters involved pending before the Board, Respondent Pinnacle, its officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with it or them are enjoined and restrained from:

(a) Failing and refusing to recognize and bargain in good faith with 1199 SEIU as the exclusive collective-bargaining representative of employees in the following bargaining unit (the "Dietary Unit"):

> All full-time and regular part-time and per-diem dietary aides and cooks employed by the employer at the facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act;

(b) Implementing changes to the terms and conditions of employment of employees in the Dietary Unit that are mandatory subjects for the purposes of collective bargaining without first providing 1199 SEIU with notice and the opportunity to bargain either to an agreement concerning the change or overall impasse on a collective bargaining agreement;

(c) Terminating, or causing the termination of, employees because of their support for and activities on behalf of 1199 SEIU and to discourage employees from engaging in these activities;

(d) Unlawfully assisting Local 713 by ordering the Dietary Unit employees to sign authorization cards for Local 713 and threatening employees with discharge, a loss of benefits, and other reprisals for refusing to sign authorization cards for Local 713;

(e) Unlawfully assisting Local 713 by deducting dues from the Dietary Unit employees' pay and remitting those dues to Local 713;

(f) Unlawfully assisting Local 713 by entering into and/or maintaining a collective bargaining agreement with Local 713 covering the Dietary Unit employees; and

(g) In any other manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act.

**IT IS FURTHER ORDERED** that Respondent Pinnacle take the following affirmative action:

(a) Rescind any and all collective-bargaining agreements with Respondent Local 713 as they relate to the Dietary Unit employees;

(b) Within FIVE (5) days of the issuance of the Court's order, mail a copy of this Order to the homes of all current Respondent Pinnacle's employees, supervisors, and managers employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York, and maintain proofs of mailing as required by this Order; and

(c) Within FOURTEEN (14) days of the issuance of the Court's order, file with the Court, with a copy submitted to the Regional Director of the Board for Region 2, a sworn affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent Pinnacle complied and will continue to comply with the terms of the decree, including the location of the documents to be posted under the terms of this decree.

## 3. RESPONDENT BUDGET

**IT IS HEREBY ORDERED** that, pending the final disposition of the matters involved pending before the Board, Respondent Budget, its officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with it or them are enjoined and restrained from:

(a) Failing and refusing to recognize and bargain in good faith with 1199 SEIU as the exclusive collective-bargaining representative of employees in the following bargaining unit (the "Nursing Unit"):

> All full-time and regular part-time and per-diem non-professional licensed practical nurses, certified nurses aides, geriatric, and techs/activity aides, employed by the employer at its facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office clerical employees, managers and guards, professional employees and supervisors as defined by the Act;

(b) Failing and refusing to recognize and bargain in good faith with 1199 SEIU as the exclusive collective-bargaining representative of employees in the following bargaining unit (the "Dietary Unit"):

> All full-time and regular part-time and per-diem dietary aides and cooks employed by the employer at the facility located at 77 Jackson Avenue, Scarsdale, New York, but excluding all other employees, including office

clerical employees, managers and guards, professional employees and supervisors as defined by the Act;

(c) Implementing and/or making changes to the terms and conditions of employment of employees in the Nursing and Dietary Units that are mandatory subjects for the purposes of collective bargaining without first providing 1199 SEIU with notice and the opportunity to bargain either to an agreement concerning the change or overall impasse on a collective bargaining agreement;

(d) Terminating, or causing the termination of, employees because of their support for and activities on behalf of 1199 SEIU and to discourage employees from engaging in these activities;

(e) Unlawfully assisting Local 713 by ordering the Nursing and Dietary Unit employees to sign authorization cards for Local 713 and threatening employees with discharge, a loss of benefits, and other reprisals for refusing to sign authorization cards for Local 713;

(f) Unlawfully assisting Local 713 by deducting dues from the Nursing and Dietary Unit employees' pay and remitting those dues to Local 713;

(g) Assisting Local 713 by entering into and/or maintaining a collective bargaining agreement with Local 713 covering the Nursing and Dietary Unit employees; and

(h) In any other manner interfering with, restraining or coercing employees in the exercise of the rights guaranteed in Section 7 of the Act.

**IT IS FURTHER ORDERED** that Respondent Budget take the following affirmative action:

(a) Rescind any and all collective-bargaining agreements with Respondent Local 713 as they relate to the Nursing and Dietary Unit employees;

(b) Within FIVE (5) days of the issuance of the Court's order, mail a copy of this Order to the homes of all current Respondent Budget employees, supervisors, and managers employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York, and maintain proofs of mailing as required by this Order; and

(c) Within FOURTEEN (14) days of the issuance of the Court's order, file with the Court, with a copy submitted to the Regional Director of the Board for Region 2, a sworn affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent Budget complied and will continue to comply with the terms of the decree, including the location of the documents to be posted under the terms of this decree.

## 4. RESPONDENT LOCAL 713

**IT IS HEREBY ORDERED** that, pending the final disposition of the matters involved pending before the Board, Respondent Local 713, its officers, representatives, agents, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with it or them are enjoined and restrained from:

(a) Entering into and/or maintaining a collective bargaining agreement with Respondent Sprain Brook, Pinnacle, Budget and/or any other entity purporting to cover employees employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York;

(b) Accepting recognition from Respondents Sprain Brook, Budget and/or Pinnacle for employees employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York;

(c) Accepting unlawful dues remittances from Respondents Sprain Brook, Budget and/or Pinnacle for employees employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York; and

(d) In any other manner interfering with, restraining, or coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act.

**IT IS FURTHER ORDERED** that Respondent Local 713 take the following affirmative action:

(a) Rescind any and all collective-bargaining agreements with Respondent Sprain Brook, Respondent Pinnacle, Respondent Budget, or any other entity purporting to cover any and all Sprain Brook Unit employees employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York;

(b) Within FIVE (5) days of the issuance of the Court's order, mail a copy of this Order to the homes of all employees employed at Respondent Sprain Brook's facility located at 77 Jackson Avenue, Scarsdale, New York and covered by a collective bargaining agreement between Respondent Local 713 and Respondent's Sprain Brook, Pinnacle, Budget and/or any other entity; and

(c) Within FOURTEEN (14) days of the issuance of the Court's order, file with the Court, with a copy submitted to the Regional Director of the Board for Region 2, a sworn affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent Local 713 complied and will continue to comply with the terms of the decree, including the location of the documents to be posted under the terms of this decree.

Dated at New York, New York,
December 12, 2014

Respectfully submitted,


_/s/ Julie Polakoski-Rennie_____
Julie Rivchin Ulmet (JRU 1969)
Julie Polakoski-Rennie (JP 4284)
National Labor Relations Board, Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
Tel. (212) 264-0300
Fax (212) 264-2450

*On behalf of:*
Karen P. Fernbach, Regional Director
National Labor Relations Board, Region 2